COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


RICKY G. DAVIS, S/K/A
  RICKY GLENDALL DAVIS

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 3073-08-1              JUDGE RUDOLPH BUMGARDNER, III
                                                             JANUARY 26, 2010

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                                   Westbrook J. Parker, Judge

              Jean Veness, Assistant Public Defender, for appellant.

              Donald E. Jeffrey, III, Senior Assistant Attorney General (William C.
              Mims, Attorney General, on brief), for appellee.


        Ricky G. Davis appeals his conviction of possession of explosive material by a convicted

felon, Code § 18.2-308.2.  He maintains .25 caliber ammunition is not an explosive material and the

evidence failed to prove he knowingly and intentionally possessed the ammunition.  We disagree

and affirm.

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  The defendant was arrested when he refused to sign a

summons for a traffic violation.  During an inventory search of the defendant's car, the arresting

officer found a box of Remington .25 caliber ammunition containing forty-two intact cartridges

in a duffle bag in the trunk of the car.  The commercial label on the box indicated it contained

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

revolver cartridges. The laboratory test of one of the cartridges determined that it contained "smokeless gunpowder."

The defendant was the registered owner of the car, and he told the officer that everything inside the car belonged to him and that no one else drove the car. When shown the cartridges, the defendant became angry and claimed that the police only stopped him because of his race and the type of wheels on the car and that the police planted the cartridges in his car. He also made threats against the officers. At trial, the defendant denied knowledge of the cartridges and testified his girlfriend had access to his car.

The girlfriend testified that a few days prior to the incident she put the cartridges in a bag and put the bag in the trunk of the defendant's car without his knowledge. She explained that the cartridges belonged to her brother and she put them into the defendant's car because she was mad and wanted to "get back" at him. The girlfriend could not explain why putting the cartridges in the car would get back at the defendant since she could not have known he would be arrested a few days later.

At the time of the incident, Code § 18.2-308.2(A) prohibited a convicted felon "to knowingly and intentionally possess or transport . . . any explosive material," but it did not specifically proscribe "ammunition."[1] Code § 18.2-308.2(D) defined "explosive material" as

> any chemical compound mixture, or device, the primary or
> common purpose of which is to function by explosion; the term
> includes, but is not limited to, dynamite and other high explosives,
> black powder, pellet powder, smokeless gun powder, detonators,
> blasting caps and detonating cord but shall not include fireworks or
> permissible fireworks as defined in § 27-95.

---

[1] In 2009 the General Assembly amended Code § 18.2-308.2(A) to specify "ammunition for a firearm" and amended Code § 18.2-308.2(D) to add "ammunition for a firearm" for the purpose of this section.

This Court applies a *de novo* standard of review when addressing a question of statutory construction. Harris v. Commonwealth, 274 Va. 409, 413, 650 S.E.2d 89, 91 (2007). The cartridges found in the defendant's car contained smokeless gunpowder, which was clearly included in subsection (D). A plain, obvious, and rational meaning of "explosive material" in former Code § 18.2-308.2 includes cartridges containing smokeless gunpowder.

The statutory definition of "explosive material" in subsection D employs the term "any" which gives an expansive characterization to those compound mixtures or devices having the primary or common purpose of functioning by explosion. "'The word "any," . . . is generally considered to apply without limitation.'" King v. Commonwealth, 53 Va. App. 257, 263, 670 S.E.2d 767, 770 (2009) (quoting Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996)). Further, the phase "includes, but not limited to" preceding the list of enumerated examples, shows the enumeration was not intended to be exhaustive. "'Includes' means includes, but not limited to." Code § 1-218.

The legislature expressly excluded "fireworks or permissible fireworks" from the definition of "explosive material." Under the fundamental principle of statutory construction encapsulated by the phrase *inclusio unius est exclusio alterius*, "'where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute.'" Wright v. Commonwealth, 49 Va. App. 312, 318, 641 S.E.2d 119, 122 (2007) (quoting Conkling v. Commonwealth, 45 Va. App. 518, 522, 612 S.E.2d 235, 237 (2005)). If the legislature had intended to exclude ammunition, which otherwise fit the statutory definition of explosive material because it contained smokeless gunpowder, it would have done so, just as it did with "fireworks or permissible fireworks."

The defendant argues since the legislature in 2009 amended Code § 18.2-308.2(A) to include "ammunition for a firearm" and amended Code § 18.2-308.2(D) to include

- 3 -

"ammunition" in the definition of explosive material, ammunition was not included in the statute at the time of the incident. He relies upon the maxim that "[i]n the field of statutory construction, a presumption normally arises that a change in law was intended when new provisions are added to prior legislation by an amendatory act." Wisniewski v. Johnson, 223 Va. 141, 144, 286 S.E.2d 223, 224-25 (1982). However, "if a statute is clear on its face, we need not resort to rules of statutory construction, but rather, we must give full effect to the plain meaning of the words chosen by the legislature." Hill v. Commonwealth, 47 Va. App. 667, 671, 626 S.E.2d 459, 461 (2006).

In addition, Code § 18.2-308.2(B) specifically excludes from the proscriptions to possessing the items stated in subsection (A) members of the armed forces and law-enforcement officers. Subsection (B) makes specific reference to subsection (A), and in creating the exemption from the prohibitions of subsection (A), it uses the term "ammunition for a firearm."[2] The inclusion of that term refutes an inference that the later amendment of the statute changed the law when it inserted the term. The trial court did not err in ruling that cartridges containing smokeless gunpowder were explosive materials.

The defendant also maintains that the evidence was insufficient to prove he knowingly and intentionally possessed explosive materials because he denied knowledge of the presence of the ammunition in his car. He argues no evidence showed that he had any special knowledge of the character of the cartridges and they could have been blanks or filled with a non-proscribed material. He relies on Young v. Commonwealth, 275 Va. 587, 659 S.E.2d 308 (2008).

In Young, a police officer found an OxyContin prescription bottle that contained two blue tablets and six white tablets in the defendant's purse. She was driving her boyfriend's car, and

---

[2] Code § 18.2-308.2(B): "The prohibitions of subsection A shall not apply to (i) any person who possesses a firearm, ammunition for a firearm, explosive material or other weapon while carrying out his duties as a member of the Armed Forces of the United States . . . ."

the prescription bottle indicated that it was issued to her boyfriend's niece. The blue tablets were identified as morphine, and the white tablets were identified as Trazadone. Id. at 589-90, 659 S.E.2d at 309.

The Supreme Court emphasized that neither the bottle nor its contents indicated the character of the pills, that the officer could not determine the nature of the pills without a laboratory analysis, and that there was no reason to infer that Young was any better informed. Id. at 592, 659 S.E.2d at 311. In reversing the conviction for possession of morphine, the Court held: "The ambiguous circumstantial evidence concerning the appearance of the bottle and its contents is as consistent with a hypothesis of innocence as it is with that of guilt." Id.

In this case, a box containing forty-two cartridges was commercially labeled as revolver cartridges. Common knowledge recognizes that firearm ammunition contains gunpowder and functions by explosion. The trial judge found that the defendant's denial was not credible, that the girlfriend's testimony "made absolutely no sense," and that there was "no question" but that the defendant knew the ammunition was inside the trunk of his car. The facts clearly distinguish Young.

The evidence was sufficient to support the findings of the trial court that beyond a reasonable doubt the defendant possessed the cartridges with knowledge of their explosive character. Accordingly, we affirm his conviction of possession of explosive material after having been convicted of a felony.

Affirmed.